1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUNSHINE KIDS JUVENILE PRODUCTS,
LLC, a Washington limited liability
company,

                    Plaintiff,

        v.

INDIANA MILLS & MANUFACTURING,
INC., an Indiana corporation,

                    Defendant.

CASE NO. C10-5697BHS

ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS DECLARATORY
JUDGMENT AND TO
TRANSFER VENUE OR IN
THE ALTERNATIVE,
DISMISS PLAINTIFF'S
AMENDED COMPLAINT

        This matter comes before the Court on Defendant Indiana Mills & Manufacturing,

Inc.'s ("Indiana") motion to dismiss declaratory judgment trade dress claims, and to

transfer venue or, in the alternative, to dismiss Plaintiff Sunshine Kids Juvenile Products,

LLC's ("Sunshine") amended complaint. Dkt. 27. The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby denies the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

        On December 13, 2010, Sunshine, a Washington limited liability company, filed

its amended complaint for false patent marking and for declaratory judgment of no trade

ORDER - 1

dress infringement.  Dkt. 15.  On January 10, 2011, Indiana filed a motion to dismiss Sunshine's declaratory judgment claim, to transfer venue or, in the alternative, to dismiss the amended complaint.  Dkt. 27.  On January 31, 2011, Sunshine responded. Dkt. 28. On February 4, 2011, Indiana replied. Dkt. 31.  On February 11, 2011, Sunshine filed a request for leave to file a surreply. Dkt. 32.  The Court will consider Sunshine's surreply (Dkt. 32-1) in deciding Indiana's motion as the surreply is limited to arguments contained only in Indiana's reply.

## II. FACTUAL BACKGROUND

For purposes of deciding Indiana's motion, the Court will take as true the facts as alleged in Sunshine's amended complaint (Dkt. 15) with the exception of the allegations containing the legal conclusion that Indiana "falsely" marked its products.  The Court will read such facts to say that Indiana simply marked its products.

## III. DISCUSSION

**A.     Motion To Dismiss Declaratory Judgment Claim**

Indiana moves to dismiss Sunshine's declaratory judgment claim regarding trade dress infringement for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Dkt. 27 at 5-7. Indiana argues that by offering a covenant not to sue, the Court is divested of subject matter jurisdiction over Sunshine's declaratory judgment claim. Dkt. 27 at 6.

**1.     Declaratory Judgment Actions Involving Intellectual Property Law**

In a declaratory judgment suit, subject matter jurisdiction depends upon whether, based on the facts alleged, there exists "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010) (*quoting MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127

(2007)).  The plaintiff bears the burden of proving the existence of such a controversy throughout the litigation.  *Id*.

In patent cases, the purpose of a declaratory judgment is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights when the opposing party does not sue. *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.,* 497 F.3d 1271, 1284 (Fed. Cir. 2007); *accord, Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 (Fed. Cir. 1988) (explaining that before the Declaratory Judgment Act, a patent owner engaging in "extra-judicial patent enforcement" tactics could infect the competitive business community environment with uncertainty and insecurity and render its competitors helpless and immobile so long as the patent owner refused to grasp the nettle and sue) (*overruled on other grounds by MedImmune,* 549 U.S. at 127).

Here, the controversy involves the parties' adverse interests in trade dress rights. *See* Dkt. 15.  To recover for trade dress infringement under the Lanham Act, a plaintiff must demonstrate that its trade dress is (1) non-functional, (2) serves a source-identifying role because it is inherently distinctive or has acquired secondary meaning; and (3) a likelihood of confusion exists.  *Disc Golf Ass'n v. Champion Discs, Inc.,* 158 F.3d 1002, 1005 (9th Cir. 1998).

Although it is not clear which protective coverage among the branches of intellectual property might apply to Indiana's potential trade dress claims, both parties rely on cases involving patent infringement to advance their arguments about the sufficiency of the covenant not to sue.  Therefore, the Court will analyze whether the disputed covenant not to sue extinguishes the controversy under case law involving patent infringement.  Accordingly, a covenant not to sue for patent infringement may divest the trial court of subject matter jurisdiction over claims for infringing acts depending on what

ORDER - 3

is covered by the covenant and whether it is comprehensive enough to eliminate the controversy between the parties. *See Dow Jones & Co,* 606 F.3d at 346-348.

### 2.    Indiana's Covenant Not to Sue

As an initial matter, the Court will address Sunshine's argument that Indiana's covenant lacks formality.  Sunshine contends that Indiana's covenant not to sue lacks "normal formalities" because "it is not signed by any [Indiana] executives or managers able to bind the company." Dkt. 28 at 18.  However, Sunshine fails to cite any authority demonstrating any requirements for such a covenant.  *Id.*  Indiana points out it cannot free itself of the obligations created by its counsel in the covenant.  Dkt. 31 at 5 (citing *Super Sack,* 57 F.3d at 1059 (recognizing the well-settled principle that when a party voluntarily chooses attorneys to represent it in an action, the party cannot later avoid the consequences of the acts or omission of these freely selected agents)).  Accordingly, the Court concludes that Sunshine's lack of formality argument is without merit because the form of Indiana's covenant "as a statement of counsel in motion papers and briefs" does not undermine the enforceability of an otherwise sufficient covenant not to sue.  *Super Sack*, 57 F.3d at 1059.

Sunshine's remaining arguments regarding Indiana's covenant not to sue are that: (1) it fails to extinguish the controversy because it is limited to only two components; (2) it does not extend to customers and suppliers; and (3) it does not extend to similar components that continue to be designed by Sunshine.  Dkts. 28 at 16-19 & 32-1.  Indiana argues that it divested the Court of subject matter jurisdiction over Sunshine's declaratory judgment claim because its covenant not to sue "covers all trade dress allegations made by [Sunshine] in its Amended Complaint." Dkt. 31 at 4- 5.

### a.    Components Covered

Sunshine maintains that Indiana's covenant is deficient because it fails to address all the components named in the amended complaint.  Dkt. 28 at 17.  Specifically,

Sunshine argues that by limiting the covenant to child seat belt buckles and harness web adjusters first designed, made, sold, or used, prior to the filing of the amended complaint, Indiana's covenant is not exhaustive of all of the potentially infringing products that Indiana might sue on and thus a substantial controversy remains. *Id.*

While Indiana's covenant covers the two components that were specifically threatened with trade dress infringement according to the amended complaint, a seat belt buckle and a harness web adjuster (Dkt. 15 at 11), Sunshine also alleges that Indiana "broadly threatened" all of the components listed in its amended complaint. Dkt. 28 at 17. Sunshine's prayer for relief in the amended complaint lists many components not included in the covenant. Dkt. 15 at 24. Because trade dress rights are inherently ambiguous and case dependent, unlike patent issues where a very specific and detailed description of rights is available, the use of broad terms like "child seat belt buckle and harness web adjuster" and "newly-designed" does little to narrow the boundaries around Sunshine's exposure to risk. *See* Dkt. 31 at 5. This is especially true in a case involving a product such as car seats where nearly all car seats use similar components.

Additionally, it is not clear to the Court exactly what is covered in the covenant not to sue when Indiana "covenants not to assert trade dress claims against the child set [sic] belt buckles and harness web adjusters relating to the current product designs produced by SKJP, namely the Radian 65SL, 80SL, and XTSL." Dkt. 31 at 5. The alleged facts indicate that Sunshine produces a "child safety platform called Radian" (Dkt. 15 at 10), and that Sunshine manufactures its car seat using components "including buckles, harness web adjusters, latch straps, top tethers, and a component called SafeStop." Dkt. 15 at 9. However, Indiana's covenant does not make clear whether it applies only to the belt buckles and harness web adjusters in the named Radian models or whether the covenant would include all of the components used in a car seat. The Court cannot determine with certainty which of the components from Sunshine's prayer for relief might or might not

be included in the covenant.  Accordingly, for purposes of deciding the motion to dismiss, the Court must resolve the ambiguity in Sunshine's favor and conclude that the covenant does not cover all the components that Sunshine argues may trigger trade dress claims.

### b.    Future Actions

Relying on a Federal Circuit case, Indiana argues that the "possibility that [it] might sue [Sunshine] for trade dress infringement of some future product . . . is too speculative a basis for jurisdiction to attach."  Dkt. 31 at 6 (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059-60 (Fed. Cir. 1995) (*overruled on other grounds by MedImmune,* 549 U.S. at 127)).  However, the facts in this case are distinguishable.  In *Super Sack,* the court found that Super Sack's unconditional agreement "not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase" was sufficient to divest the court of jurisdiction over Chase's counterclaims for non-infringement, invalidity and unenforceability.  57 F.3d at 1059.  The court based its decision on the fact that Chase was engaged in no "*present activity*" placing it at risk of an infringement suit and Chase did not claim it was planning to make any new infringing product.  *Id.* (emphasis in original).  Accordingly, the court found "[t]he residual possibility of a future infringement suit based on Chase's future acts [was] simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity."  *Id.* at 1060.

Here, the products in question are components of a car seat.  Dkt. 15 at 9. Sunshine makes car seats (Dkt. 15 at 9-10) and continues to refine the components it uses in making car seats.  Dkts. 28 at 18, 29 at 2 & 32-1 at 3. For example, Sunshine indicates it has redesigned its components for use in a new 2011 car seat model.  Dkts. 29 at 2 ¶ 5, 32-1 at 3.  Therefore, unlike Chase in *Super Sack,* Sunshine is engaged in "present activity" that may infringe on Indiana's trade dress rights.  These are "meaningful preparatory steps" towards a potentially infringing activity that were absent in *Super*

1    *Sack. See* 57 F.3d at 1059-1060.  Also, unlike Chase, Sunshine's activity is not so

2    speculative that it necessarily divests the Court of jurisdiction over a declaratory

3    judgment action involving such activity.

4                    **c.    Customers and Suppliers**

5          Sunshine argues that Indiana's covenant also fails to eliminate the controversy

6    because it does not protect Sunshine's customers and suppliers.  Dkts. 28 at 17 & 32-1 at

7    4.  In response, Indiana argues that Sunshine cannot establish an actual controversy

8    "regarding indemnification of its customers because it cannot [allege] that any of its

9    customers [were] ever threatened by [Indiana] for [trade dress infringement]."  Dkt. 31 at

10   6-7. However, courts recognize that when a defendant's conduct, expressed or implied,

11   creates the fear that customers face an infringement suit or the threat of one, the

12   controversy is sufficiently immediate and real. *Arrowhead Indus. Water, Inc. v.*

13   *Ecolochem, Inc.,* 846 F.2d at 736 *(citing Grafon Corp. v. Hausermann*, 602 F.2d 781,

14   783-784 (7th Cir. 1979) (holding that "[p]laintiff's belief in the imminence of a real or

15   threatened infringement suit need not be the product of an express charge by the

16   defendant of patent infringement; an implied charge, or a course of conduct on the part of

17   the defendant which would cause a reasonable man to fear that he or his customers face

18   an infringement suit or the threat of one is sufficient")).

19

20         More recently, the Federal Circuit recognized, in the context of patent disputes,

21   that protecting suppliers, manufacturing affiliates, and all customers from patent

22   uncertainty and related suit, might be a substantial controversy of sufficient immediacy

23   and reality to warrant the issuance of declaratory judgment. *Janssen Pharmaceutica, N.V.*

24   *v. Apotex, Inc.,* 540 F.3d 1353, 1359 (Fed. Cir. 2008).  However, the court also noted that

25   when a covenant not to sue expressly includes protection for suppliers, manufacturing

26   affiliates, and all customers, the controversy is rendered moot and will not give rise to

27   declaratory judgment jurisdiction.  *Id.*

28

ORDER - 7

Here, the language of Indiana's covenant not to sue states that:

This covenant not to sue will not extend to *any* newly designed child car seat belt buckles or harness web adjusters either under the Radian name or *any other name*, which were first designed, made, sold, or used by SKJP after the date of filing the Amended Complaint.

Dkt. 31 at 5, emphasis added. Thus, the language expressly states that it is a limited covenant. *Id*. Indiana has chosen to omit Sunshine's customers and suppliers in its covenant despite Sunshine's explicit objection to the covenant on this ground. *See* Dkts. 31 at 5 & 28 at 17. Therefore, Indiana has failed to foreclose its future pursuit of related trade dress claims against Sunshine's customers and suppliers. According to the facts as alleged by Sunshine, Indiana is prepared and willing to assert its trade dress rights. Dkt. 15 at 8-9 ¶¶ 22, 25. Sunshine's amended complaint also states that Indiana uses threats, including the threat of litigation, to dissuade companies who would otherwise compete with Indiana in manufacturing car seats and related products. Dkt. 15 at 10-11 ¶¶ 34, 35. The Court concludes that these alleged facts indicate a pattern of conduct on the part of Indiana which if established as true could cause a "reasonable man to fear that he or his customers" face an infringement suit. *See* 602 F.2d at 783-84. Therefore, Sunshine's belief that its customers or suppliers might face litigation for trade dress infringement and the absence of protection from such litigation in Indiana's covenant support the Court's continued declaratory judgment jurisdiction.

Because the Court cannot properly evaluate the comprehensiveness of Indiana's covenant not to sue, it is unable to conclude that the covenant is exhaustive enough to eliminate the uncertainty, and therefore the controversy, surrounding Sunshine's legal rights regarding trade dress. Therefore, the Court concludes that Indiana has not shown that the Court's jurisdiction has been divested and Indiana's motion to dismiss Sunshine's declaratory judgment claim should be denied.

**B.      Motion to Transfer Venue**

Indiana moves to transfer this matter to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). Dkt. 27 at 7-8.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404 is both to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964).  The moving party bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favor dismissal. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1118 (9th Cir. 2002).  The decision to transfer an action is left to the sound discretion of the trial court, and the court must weigh and balance the factors on an individualized basis. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).

The parties do not dispute that this case could have been brought in the Southern District of Indiana so the issue before the Court is only whether the convenience of the parties or witnesses and the interest of justice weigh in favor of transfer.  Generally, there is a strong presumption in favor of a plaintiff's choice of forum.  *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). Therefore, to justify a transfer of venue, defendants must make "a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Dole*, 303 F.3d at 1118.  In exercising its discretion under § 1404, the court may consider the following:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

ORDER - 9

1   *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000).

2       **1.      Plaintiff's Choice of Forum and Location of Relevant Events**

3       The Ninth Circuit has held that the moving party has "the burden to justify by

4   particular circumstance that the [plaintiff's] forum [choice is] inappropriate."

5   *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  It is

6   a well-settled principle that a plaintiff's preference for a forum should not be disturbed

7   unless the defendant makes a "strong showing of inconvenience."  *Decker Coal Co. v.*

8   *Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

9       Indiana argues that, according to a recent district court opinion, the moving

10  party's burden of making a strong showing of inconvenience has been overstated.  Dkt.

11  31 at 8-9 (citing *Patent Management Foundation, LLC v. Analog Devices*, *Inc*., 2011

12  WL 197831, slip op. at *3 (N.D. Cal. Jan. 20, 2011)).  However, *Patent Management*

13  and the other cases relied on by Indiana in support of its argument generally involve

14  plaintiffs who do not reside in the forum where the litigation was originally brought or

15  situations where the forum has no substantial connection to or interest in the subject

16  matter.  *See, e.g., Patent Management*, 2011 WL 197831 at *1, n.1 (noting that

17  "[p]laintiff has no cognizable activities in California (or elsewhere) other than

18  prosecuting this lawsuit."); *In re Nintendo Co., Ltd,* 589 F.3d 1194, 1198 (Fed. Cir.

19  2009) (finding that transfer was appropriate because [n]o parties, witnesses, or evidence

20  [had] any material connection to the venue chosen by the plaintiff"); *In re Hoffmann-La*

21  *Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ( stating that "there appears to be no

22  connection between this case and the Eastern District of Texas except that in anticipation

23  of this litigation").  In cases like these, plaintiffs are often engaged in forum-shopping or

24  otherwise making it prohibitively expensive for defendants to litigate in the plaintiff's

25  preferred forum.  *See, e.g.*, *Patent Management*, 2011 WL 197831.  Thus, the Court

26  acknowledges that when there are nonexistent or contrived contacts to the plaintiff's

27
28

ORDER - 10

forum, the defendant's burden in making a strong showing of inconvenience may be relaxed.

Here, unlike the cases relied on by Indiana, there is no dispute that Sunshine has a material connection to its chosen forum. Dkts. 27 at 10-11 & 31 at 9. Sunshine identifies witnesses and evidence located in Washington. Dkt. 28 at 21-23. Also, Sunshine is a resident of this district as it is a Washington corporation with its principal place of business located in Sumner. Dkt. 15 at 2.

Additionally, Indiana also argues that the presumption of the plaintiff's choice of forum is eroded because Sunshine "brought this action as a *qui tam* relator (on behalf of the U.S. government, not itself)." Dkts. 27 at 10 & 31 at 9. In support of this argument, Indiana relies on cases like *Patent Management* (Dkt. 31 at 9), but the facts of this case are distinguishable. The plaintiff in *Patent Management* had no other nexus to the conduct underlying the claim other than as a *qui tam* relator and a two-month presence in its chosen forum. 2011 WL 197831, at *3. *Patent Management* did not involve a dispute between two businesses in the same industry. *Id*. Rather, the plaintiff LLC was formed in the disputed forum two months before the lawsuit commenced strictly for the purpose of rectifying "the evils of false patent marking." *Id*. at *1. Specifically, the plaintiff's business was to chase potential false marking claims by seeking out "certain products and or certain companies that mismarked their products or brochures." *Id*. Here, the nexus between Sunshine's claims and the forum is substantially greater than the plaintiff in *Patent Management*. Unlike the plaintiff in *Patent Management,* Sunshine is incorporated and has its principal place of business in its chosen forum and Sunshine is in the business of manufacturing and selling the type of products involved in its false marking claims. Dkt. 15 at 2 ¶¶ 5, 7.

Next, Indiana argues that the location of relevant events factor weighs in its favor because Indiana is "headquartered in Westfield, Indiana, and all decisions regarding

ORDER - 11

packaging and markings of the Patents-in-Suit were made by [Indiana] personnel in the Southern District of Indiana." Dkt. 27 at 9. Indiana also argues that this factor weighs in its favor because Sunshine "fails to identify any events having any relevance to its false marking claims that occurred in the Western District of Washington." Dkt. 31 at 11. However, Sunshine claims Indiana's arguments fail because it has witnesses and documents relevant to its false marking claims located in this district. Dkt. 28 at 21. Additionally, according to Sunshine's alleged facts, Indiana has "operations in England, China, Mexico and North Carolina" which may be sources of evidence relevant to Sunshine's false marking claim. Dkt. 28 at 21-22. Sunshine also points out that Indiana ignores Sunshine's trade dress claim when Indiana claims *all* the relevant witnesses and potential evidence is located in Indianapolis. *See* Dkts. 28 at 22 & 27 at 9.

The Court concludes that Indiana has failed to make a strong showing of inconvenience with respect to Sunshine's choice of forum. In addition, the Court is not persuaded by Indiana's arguments on the location of relevant events. First, Indiana has not shown that all of its relevant production and/or marking activities are limited to the Southern District of Indiana. *Id. &* Dkt. 31 at 11. Second, Indiana's arguments only address the alleged false marking claim and ignore Sunshine's trade dress claim. Accordingly, the Court concludes that Sunshine's choice of forum weighs against transfer and that the location of the relevant events factor is neutral.

**2.     Contacts With the Forum**

The Court is mindful of the burden associated with Indiana's litigating this lawsuit in Washington and that Indiana is headquartered in Indiana and has minimal contacts with Washington. *See generally* Dkt. 27. These considerations suggest that the Southern District of Indiana may, in many ways, be a more convenient location for Indiana to litigate. *See id.* Nevertheless, Sunshine is a Washington corporation with strong contacts to Washington and it chose to bring suit in Washington rather than

Indiana.  Dkt. 15.  Parties have a previous business relationship with each other and thus,

presumably, each has some contacts with each other's home forum.  *See id*.  Therefore,

the Court concludes that, on balance, this factor is neutral.

### 3. Differences in the Cost of Litigation

Although Indiana argues its corporate witnesses are all in the Southern District of

Indiana (Dkt. 31 at 9-10), Sunshine has an equally valid argument regarding it's corporate

witnesses (Dkt. 28 at 22-23).  Indiana argues that Sunshine has only one witness in this

case and that he does not live in Washington.  Dkt. 27 at 9-10.  Thus, Indiana asserts that

"*all* relevant witnesses and potential witnesses in the present case are sited within the

Southern District of Indiana."  Dkt. 27 at 11 (emphasis in original).  However, Sunshine

rebuts this assertion with a list of named witnesses from Washington as well as witnesses

who will come from outside both Indiana and Washington.  Dkt. 28 at 21-23.  While

Indiana dismisses Sunshine's list of witnesses as irrelevant, it assumes that Sunshine will

no longer be pursuing its declaratory judgment claim.  *See* Dkt. 27 at 8-9.  In addition,

Indian does not name any particular witness, the nature of their testimony, or provide any

measure of the heightened inconvenience.  *Id*.  While Indiana and some, or even all, of its

witnesses may reside in Indiana, and it would arguably be cheaper and more convenient

for those witnesses to testify in an Indiana court, Sunshine resides in Washington and has

shown it has witnesses who live in Washington who will participate and testify in this

action.  Indiana fails to make a compelling argument why the Southern District of Indiana

is the more convenient forum.  Merely shifting the inconvenience of witnesses does not,

therefore, weigh in favor of a transfer to Indiana. *See Decker Coal,* 805 F.2d at 843

(refusing to transfer when such transfer would merely shift rather than eliminate the

inconvenience).

In addition, the Court is hesitant to place a significant amount of weight on the

current list of witnesses provided by either party because the case is still in the relatively

early stages of litigation and more witnesses will likely be identified. Therefore, the Court

concludes that, considering both parties have significant concerns with the costs of

proceeding in either state, this factor is neutral.

### 4.    Access to Sources of Proof

Indiana asserts that the ease of access to sources of proof weighs in favor of

transfer.  Dkt. 27 at 11.  Indiana claims that the majority of the sources of proof are in the

Southern District of Indiana, along with all the employees responsible for making patent

decisions.  *Id.*  However, Indiana did not provide any details about these employees or

show how any piece of evidence material to the instant case makes Indiana more

convenient. *See id.*  While the location of corporate personnel and documents is relevant,

it is likely that both parties will present evidence of how Indiana's products were made,

sold, and used, evidence which may come from many sources.  For example, because

according to Sunshine's alleged facts, Indiana's manufacturing takes place outside the

United States and its products are sold and used nationally and internationally, relevant

evidence may come from many locations.  Dkt. 28 at 21-22.  Even assuming that there is

more documentary evidence in the Southern District of Indiana, there is little doubt that

Indiana can use electronic methods to transmit much of the information in addition to

traditional methods of delivery.  *See Mayberry v. Int'l Business Machines Corp.*, Slip

Copy, 2009 WL 1814436 at *5 (N.D. Cal. 2009) (stating that given the ease of electronic

transmission of documents, this factor should be given minimal weight); *see also Morrow

v. Vertical Doors Inc.*, Slip Copy, 2009 WL 1698560 at *4 (D. Ariz. 2009) (concluding

that given the recent advances in electronic communication and document production,

discovery costs should be similar in either forum).  Thus, the Court concludes the sources

of proof factor is neutral.

1

### 5.    Undisputed Factors

2

Neither party disputes that the applicable laws are the federal statutes governing

3

patents and federal case law governing trade dress infringement. A district court in either

4

location is equally capable of applying the patent laws that govern this case. *See In re TS*

5

*Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). Therefore, the Court concludes

6

that this factor is neutral.  In addition, neither party makes an argument regarding non-

7

party witnesses, related litigation, or forum congestion; therefore, the Court concludes

8

these factors are neutral.

9

### 6.    Conclusion

10

Indiana has failed to show why the interest of justice would be better served by a

11

change of venue.  Having considered all of the *Jones* factors relevant to this case, the

12

Court concludes that on balance these factors do not sufficiently weigh in favor of

13

transfer to justify upsetting Sunshine's choice of forum.  Therefore, the Court concludes

14

that Indiana's motion to transfer venue should be denied.

15

## C.    Motion to Dismiss

16

### 1.    Rule 12(b)(6) Standard

17

Indiana also moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil

18

Procedure.  Specifically, Indiana contends that Sunshine failed to state a plausible claim

19

under 35 U.S.C. § 292 as required by the pleading standards provided in Rules 8(a)(2)

20

and 9(b) of Federal Rules of Civil Procedure.  Dkts. 27, 31.  To state a false marking

21

claim under § 292, a plaintiff must show that the defendant (1) marked an unpatented

22

article, (2) with the intent to deceive the public. *Forest Group, Inc. v. Bon Tool Co.,* 590

23

F.3d 1295, 1300 (Fed. Cir. 2009) (*citing Clontech Labs., Inc. v. Invitrogen Corp.,* 406

24

F.3d 1347, 1352 (Fed. Cir. 2005)).  "Intent to deceive is a state of mind arising when a

25

party acts with sufficient knowledge that what it is saying is not so and consequently that

26

the recipient of its saying will be misled into thinking that the statement is true." *Forest*

27

28

1   *Group, Inc. v. Bon tool Co.,* 590 F.3d 1295, 1300 (Fed. Cir. 2009) (internal citations

2   omitted).  Indiana disputes only the second element arguing that Sunshine failed to allege

3   sufficient facts showing Indiana's intent to deceive the public and that Rule 9(b)'s

4   heightened pleading standard applies. Dkt. 27.

5       Dismissal under Rule 12(b)(6) for failure to state a claim is only appropriate if the

6   complaint fails to provide the defendant fair notice of a legally cognizable claim and

7   notice of the grounds on which it rests or if the complaint fails to raise the right to relief

8   above the speculative level.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  In

9   considering whether the complaint is sufficient to state a claim, a court must take all

10  material allegations as true and construe them in the light most favorable to the plaintiff.

11  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  Generally, to survive a motion to

12  dismiss, the complaint does not require detailed factual allegations but must provide the

13  grounds for entitlement to relief and not merely a "formulaic recitation" of the elements

14  of a cause of action.  *Twombly,* 550 U.S. at 555.  "Factual allegations must be enough to

15  raise a right to relief above the speculative level, on the assumption that all the allegations

16  in the complaint are true (even if doubtful in fact)."  *Id.* at 555-56 (internal citations

17  omitted).

18

19      Under Rule 9(b) "[i]n alleging fraud or mistake, a party must state with

20  particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge,

21  and other conditions of a person's mind may be alleged generally."  Because the Federal

22  Circuit has not specifically ruled on the applicability of Rule 9(b) to intent to deceive in

23  false marking claims, the parties disagree on whether the false marking claims at issue are

24  subject to the heightened pleading requirements or subject only to the general requirement

25  under Rule 8(a).  Dkts. 27 at 13 & 28 at 13.  For purposes of deciding Indiana's motion to

26  dismiss, the Court need not resolve the dispute over the pleading standard because the

27  amended complaint satisfies the heightened pleading standard under Rule 9(b).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rule 9(b) provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally." The district court cases cited by Indiana state that the heightened pleading standard applies to false marking claims. *See* Dkt. 27 at 13-14. However, several of these courts also recognize that, similar to cases involving actual claims of fraud, "a relaxed Rule 9(b) standard may apply when 'essential information lies uniquely within another party's control.'" *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 559 (D. Del. 2010) (quoting *Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1328, 1330-31 (Fed. Cir. 2009)); *Simonian v. Cisco Sys., Inc.*, 2010 WL 2523211 at *3; *Hollander v. Ortho-McNeil-Janssen Pharmaceuticals, Inc*. 2010 WL 4159265, at *4 (E.D. Pa. 2010). As a result, a plaintiff may plead based upon information and belief, "but only if the pleading sets forth specific facts upon which the belief is reasonably based." *Brinkmeier*, 733 F. Supp. 2d at 559 (internal citations omitted). Courts have emphasized that "boilerplate and conclusory allegations will not suffice." *Id.* Instead, plaintiffs must offer "factual allegations that make their theoretically viable claim plausible." *Id.* Also, when a plaintiff includes the "who, what, when, where, and how, of the misconduct charged," the plaintiff satisfies Rule 9(b)'s heightened pleading requirement. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Exergen Corp. v. Walmart Stores, Inc.,* 575 F.3d 1312, 1328 (Fed. Cir. 2009)

### 2. Sufficiency of Sunshine's Pleading under Rule 9(b)

Here, Sunshine satisfactorily alleges the "who, what, when, where, and how" of the alleged false marking with sufficient allegations of underlying facts from which the Court may reasonably infer that Indiana marked an unpatented article with the intent to deceive the public. *See Exergen,* 575 F.3d at 1328. The *who* is Indiana, its officers, employees, and its attorneys. Dkt. 15 at 6-7 & 16-17. The *what* is knowingly marking buckles, harness web adjusters and an anti-cinch seat belt system with expired patent numbers '688, '705, '889, and '484. Dkt. 15 at 11-15. The *when* is after the respective

expiration dates until at least the date of the filing of Sunshine's complaint. Dkt. 15 at 11-15. The *where* is on the products themselves and the *how* is by marking the products with the expired patent numbers.  Dkt. 15 at.13-15 (including pictures of the marks and changes over time).

Additionally, Sunshine alleges that Indiana not only owns numerous patents but also that Indiana has sued to enforce its patent rights at least eight times.  Dkt. 15 at 8 ¶ 22, & at 17 ¶¶ 53, 54.  Sunshine also maintains that Indiana expressed its intent to assert its intellectual property rights against Sunshine if Sunshine "continued to manufacture and [sell] its buckles and harness web adjuster."  Dkt. 15 at 11.  Also, Sunshine alleges that Indiana's inclusion of the expired patents on its products was intentional because Indiana not only revised its products' materials but also revised the patent markings after the patents had expired. Dkt. 15 at 13 ¶ 45.

Sunshine also argues that Indiana has a sophisticated understanding of patent law. Dkt. 15 at 6-9.  Indiana contends that this is an insufficient basis for a false marking claim.  Dkt. 27 at 15-16.  The Court concludes that the cases Indiana relies on to support its arguments are not applicable here.  For example, in *Hollander,* the court held that the plaintiff's allegations did not sufficiently articulate knowledge of falsity or intent to deceive because the plaintiff did not allege facts that created an inference that defendant knew that the patents at issue actually expired.  *Hollander,* 2010 WL 4159265, at *5.  The plaintiff, who did not allege any injury to himself, generally alleged that the defendant was a "highly sophisticated business entity with extensive experience" with patent issues and that it "[knew] or reasonably should [have known] that it [was] falsely marking its . . . products with an expired patent."  *Id.* (omission in original).  However, the plaintiff offered no facts supporting his allegations and the court found this was an insufficient pleading even under a relaxed Rule 9(b) standard.  *Id.*

Here, unlike the plaintiff in *Hollander,* Sunshine has pled the necessary underlying facts and does not rely only on the general characterization of Indiana as a sophisticated company.  Rather, Sunshine alleges that Indiana is sophisticated because: (1) it has applied for many different types of patents in multiple countries (Dkt. 15 at 18 ¶ 62); (2) it has specialized legal representation (Dkt. 15 at 19 ¶ 64); (3) it understands the value of patent rights because it marks its products with "patent pending" prior to receiving a patent (Dkt. 15 at 20 ¶ 71); and (4) it has asserted its patent rights many times. Dkt. 15 ¶¶ 22, 54.  Additionally, Sunshine alleges that specific officers and employees of Indiana knew the patents were expired.  Dkt. 15 at 10, 16.  Based on the facts alleged, the Court concludes that Sunshine has done more than merely making a general allegation of sophistication.  Instead, Sunshine has alleged sufficient facts to support an inference that Indiana had knowledge and intent to deceive with respect to the patents at issue because Sunshine has pled facts that show Indiana understands the purpose of patents, the advantages and limitation of patents and patent law in general.

### 3.      Presumption of Intent to Deceive

When pleading a false marking claim, "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362-63 (Fed Cir. 2010) (internal citations omitted).  Sunshine alleges that specific employees of Indiana admitted that they knew that the patents at issue had expired. Dkt. 15 at 10-17 ¶¶ 35, 51, 52.  Sunshine's complaint also includes pictures alleging that, despite knowledge that the patents were expired, Indiana continued to mark its products with the patents.  Dkt. 15 at 13-15.  Together, these facts show a false statement (that Indiana had a current patent when it was actually expired) and knowledge that the statement was false, thereby creating a presumption of intent to deceive which Indiana failed to rebut. *See Pequignot*, 608 F.3d at 1362-63.

ORDER - 19

**4.   Conclusion**

Therefore, taking the facts as alleged in Sunshine's amended complaint as true, with the exception as discussed in the facts section above, the Court concludes that it is reasonable to infer that Indiana knowingly misrepresented its right to patent protection and therefore falsely marked its products in violation of 35 U.S.C. § 292.  Sunshine's allegations are specific enough to give Indiana notice of the particular misconduct alleged so that it can defend against the false marking claim and thus the pleading is specific enough to comport with Rule 9(b) and defeat Indiana's motion to dismiss.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Indiana's motion to dismiss declaratory judgment trade dress claims, and to transfer venue or, in the alternative, to dismiss Sunshine's amended complaint, is **DENIED** for the reasons stated herein.

DATED this 9th day of March, 2011.


BENJAMIN H. SETTLE
United States District Judge