UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SUNSHINE KIDS JUVENILE PRODUCTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA MILLS & MANUFACTURING, INC.,<br><br>Defendant. | CASE NO. C10-5697BHS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION |

This matter comes before the Court on Defendant Indiana Mills & Manufacturing, Inc.'s ("Indiana") motion for reconsideration. Dkt. 36. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On March 9, 2011, the Court denied Indiana's motion to dismiss declaratory judgment trade dress claims and to transfer venue or, in the alternative, dismiss Plaintiff Sunshine Kids Juvenile Products, LLC's ("Sunshine") amended complaint. Dkt. 34. On March 23, 2011, Indiana filed a motion for reconsideration of the Court's order. Dkt. 36. On April 4, 2011, Sunshine responded (Dkt. 39) and on April 8, 2011, Indiana replied

ORDER - 1

(Dkt. 40). On April 12, 2011, Sunshine filed a request for leave to file a surreply. Dkt. 41. Because Sunshine's surreply addresses issues that first appeared in Indiana's reply, the Court will consider the surreply in deciding the instant motion.

On May 19, 2011, the parties filed a status update informing the Court that they were unable reach an agreement on the Covenant Not to Sue. Dkt. 44. On that same day, Indiana submitted an amended covenant. Dkt. 45. On May 20, 2011, Sunshine filed a motion for leave to respond to Indiana's amended covenant. Dkt. 46. The Court will consider the amended covenant and Sunshine's response.

## II. FACTUAL BACKGROUND

As the Court stated in its previous order denying Indiana's motion to dismiss, in deciding Indiana's motion for reconsideration, the Court will take as true the facts as alleged in Sunshine's amended complaint (Dkt. 15) with the exception of the allegations containing the legal conclusion that Indiana "falsely" marked its products. The Court will read such facts to say that Indiana simply marked its products.

## III. DISCUSSION

Motions for reconsideration are governed by Local Rule CR 7(h), which provides as follows:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rule CR 7(h)(1). Indiana moves the Court to reconsider its prior order based on modifications made to Indiana's covenant not to sue for trade dress infringement and based on new legal authority contained in a Federal Circuit opinion issued March 15, 2011 (*see In re BP Lubricants*, 2011 WL 873147 (Fed. Cir. 2011)). Because Indiana presents new facts, as well as new legal authority, in its instant motion, the Court will

reconsider its previous order on Indiana's motion to dismiss in light of these new facts and authority.

**A.     Declaratory Judgment**

Indiana argues that the Court's jurisdiction over Sunshine's declaratory judgment claim in this matter is extinguished because its new "covenant not to sue [Sunshine] for trade dress infringement" sufficiently addresses "the products identified in the complaint." Dkts. 36 at 3 & 40 at 2. Sunshine maintains that this covenant still fails to resolve the trade dress issues for the following reasons:

> The covenant only extended to car seat assemblies as a whole, and failed to cover the car seats' constituent components that may be sold separately, and which are the centerpiece of the trade dress dispute.
> The covenant did not extend to newly designed components that Sunshine Kids has yet to make and sell.
> The covenant lacked a signature or a clear indication that IMMI agreed to be bound by it.

Dkt. 39 at 4.

As discussed in the Court's previous order, the purpose of the declaratory judgment in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights when the other side does not sue. *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007). Subject matter jurisdiction in a declaratory judgment suit depends upon whether, based on the facts alleged, there exists "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010) (*quoting MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007)). Declaratory judgment jurisdiction is met "where the [defendant] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics*, *Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). An express

accusation of infringement or of judicial enforcement is not required to support declaratory judgment jurisdiction. *See id*. at 1381-82.

A covenant not to sue for patent infringement may divest the trial court of subject matter jurisdiction over claims for infringing acts depending on what is covered by the covenant and whether it is comprehensive enough to eliminate the controversy between the parties. *Dow Jones & Co,* 606 F.3d at 1346-1348. When the covenant is unconditional and the covenant completely "extinguishe[s] any current or future case or controversy between the parties, [it divests] the district court of subject matter jurisdiction." *Id*. at 1348. For example, jurisdiction was extinguished in *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059-60 (Fed. Cir. 1995) (*overruled on other grounds by MedImmune,* 549 U.S. at 127), when the defendant offered an unconditional agreement "not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase" and because Chase was engaged in no "present activity" placing it at risk of an infringement suit and Chase did not claim it was planning to make any new infringing product. Likewise, in *Amana Refrigeration, Inc*. v. *Quadlux, Inc*., 172 F.3d 852, 855, (Fed. Cir. 1999), the covenant not to sue divested the court of jurisdiction when the defendant promised not to sue Amana for patent infringement based on the patent-in-suit "as it presently reads, with respect to any product currently advertised, manufactured, marketed or sold by Amana, or any product which was advertised, manufactured, marketed or sold by Amana prior to the date of" the promise. However, when a covenant not to sue does not bar future infringement actions if the accused infringer again offers for sale the infringing articles, courts are not divested of jurisdiction. *Revolution Eyewear Inc*. *v. Aspex Eyewear Inc*., 556 F.3d 1294, 1296-97 (Fed Cir. 2009).

### 1.   **Components Controversy**

Sunshine argues that Indiana's covenant remains insufficient because it "only extended to car seat assemblies as a whole" and does not cover the "constituent components that may be sold separately, and which are the centerpiece of the trade dress dispute." Dkt. 39 at 4; *see also* Dkts. 41 at 6 & 36-1. Indiana contends that its covenant does cover the individual components because it explicitly lists "every component that [Sunshine] identifies and Sunshine fails to identify even a single component that is not covered." Dkt. 40 at 2. Indiana also argues that "the amended complaint does not mention, let alone support, any actual case or controversy between the parties over the trade dress of each and every component of the [Sunshine] Radian product line." Dkt. 36 at 4.

The Court notes that with the exception of the inherent ambiguity associated with trade dress claims, this new covenant eliminates the previously identified ambiguities as to the Radian models 65 SL, 80 SL and XTSL. Dkt. 34 at 5-6. However, although the covenant addresses all of the issues as to those specific car seat models, the Court does not agree with Indiana that the trade dress dispute is limited to "these products and only these products." Dkt. 36 at 3.

Mindful that the plaintiff bears the burden of proving the existence of a controversy throughout the litigation (*Dow Jones*, 606 F.3d at 1345), the Court notes that a case or controversy arises where the [defendant] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. *Id*. at 1347. Moreover, a plaintiff is not required to wait for specific threats of infringement or wait until it has actually infringed upon Indiana's alleged rights before seeking a declaration of its own rights. *Sony Electronics, Inc.*, 497 F.3d at 1284; *see also*, *SanDisk*, 480 F.3d at 1380-81.

Here, Sunshine has consistently articulated that its declaratory judgment claim includes the car seats' constituent components that may be sold separately from the assembled car seats. *See, e.g.*, Dkts. 15 at 24 & 39 at 4. First, Sunshine has plead facts that support its contention that the car seats' constituent components are as much the subject of the trade dress controversy as the assembled car seats. For example, taking Sunshine's allegations as true, the controversy began when Indiana responded to Sunshine's entry into the manufacturing market selling competing car seats, buckles, harness web adjusters, and "Safe Stop components" with threats of suit for infringing on Indiana's intellectual property rights. Dkt. 15 at 11 & 16. Then, according to Sunshine, Indiana sought Sunshine's complicity in a plan to dissuade another large car seat manufacturer from following Sunshine's lead and making its own components. Dkt. 15 at 11. The Court concludes that these facts show a pattern of conduct indicating that Indiana is concerned with competing companies' manufacture and sales of car seat components. Accordingly, it is not unreasonable for the Court to infer that after threatening suit based on two components initially, Indiana would threaten other competing components.

Second, Sunshine's complaint articulates its desire to resolve the uncertainty regarding its rights to make its products and avoid a trade dress infringement suit from Indiana on both components and assembled car seats. Dkt. 15 at 22 & 24. For example, in Sunshine's second claim, in addition to the specific allegations regarding the "child seat belt buckle and harness web adjuster products," Sunshine also makes the general allegation that "[Sunshine] does not infringe any valid trade dress right of [Indiana]." Dkt. 15 at 22, ¶ 86. Additionally, in the prayer for relief, Sunshine identifies the three distinct issues motivating its request for declaratory judgment on Indiana's trade dress rights: (1) trade dress infringement via individual constituent components; (2) trade dress infringement via the seat belt buckles and harness web adjuster products; and (3) trade

dress infringement via the "car seats in its Radian security platform." Dkt. 15 at 24. The specific language included in the prayer for relief states that Sunshine seeks an order from the Court to:

> E. Declare that [Indiana] does not possess any valid trade dress rights in any aspect of its harness web adjusters and buckles, or in any of its 3-point and 5-point harnesses, retractors, top tethers, latch straps, SafeStop harness assemblies, harness web adjusters, webbing, harness chest clips, T-bars, slides, and LATCH attachments.
> F. Declare that [Indiana] does not have any valid rights in any of the Alleged Trade Dress forming the basis of its assertions against Sunshine Kids.
> G. Declare that the Sunshine Kids child car seats in its Radian security platform do not infringe any trade dress rights possessed by [Indiana] in any aspect of its harness web adjusters and buckles, or in any of its 3-point and 5-point harnesses, retractors, top tethers, latch straps, SafeStop harness assemblies, harness web adjusters, webbing, harness chest clips, T-bars, slides, and LATCH attachments.

Dkt. 15 at 24.

The Court concludes that the facts alleged by Sunshine refute Indiana's argument that there is not a case or controversy concerning the trade dress of the component parts. Dkt. 36 at 4. Indiana's conduct prior to Sunshine filing the instant suit, as well as Indiana's current arguments and rejection of Sunshine's proposed covenant not to sue, further informs the Court's conclusion that Indiana has taken a position that puts Sunshine in the position of either pursuing arguably illegal behavior or abandoning that which it claims a right to do. *SanDisk*, 480 F.3d at 1381.

In addition, the Court does not find Sunshine's contention unreasonable that Indiana's careful limitation in its covenant not to sue to "Radian models 65 SL, 80 SL and XTSL" or the components that are "part of the identified Radian Models 65SL, 80 SL, and XTSL" suggests a reservation of the right to sue when these same designs or components are used or sold individually or as part of another model. Unlike the covenants in *Super Sack* and *Amana* where the broad, all-encompassing language eliminated any claim with respect to any product based on the patents in question, here,

rather than encompassing any acts of infringement for the components in question individually, whether or not part of another product, the language used by Indiana expressly limits the covenant to the Radian models 65 SL, 80 SL and XTSL; those models' variants; and those models' components. Dkt. 45-1 at 2.

Thus, because the covenant not to sue does not eliminate the controversy between the parties as to their adverse rights in the individual car seat components when those components are sold separately from the 65 SL, 80 SL and XTSL Radian models, uncertainty remains. Without resolution, the possible chilling effect on competition remains and Sunshine is still under the apprehension of suit. This is exactly the kind of dispute the declaratory judgment requested by Sunshine is intended to resolve.

### 2. Newly Designed Products

Indiana argues that this Court lacks jurisdiction over unidentified products that [Sunshine] might make. Dkt. 40 at 2. Sunshine's argument is not readily apparent to the Court. Sunshine first asserted that Indiana's covenant is deficient because "the covenant did not extend to newly designed components that Sunshine Kids has yet to make and sell." Dkt. 39 at 4. It then asserted that the covenant covers components "made according to past or present designs, regardless of whether they are made in the past or future." Dkt. 41 at 6.

A covenant not to sue need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute the "actual controversy" between the parties. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345-48 (Fed. Cir. 2007). The residual possibility of a future infringement suit based on theoretical future acts is too speculative a basis for jurisdiction. *Super Sack*, 57 F.3d at 1060. Accordingly, an actual controversy cannot be based on a fear of litigation over new products "in the pipeline" but not advertised, manufactured or sold before the filing date. *Amana*, at 855. However, as noted in the Court's previous order on Indiana's

ORDER - 8

motion to dismiss (Dkt. 34 at 6-7), when a party is engaged in an identified ongoing or present activity, the risk of infringement may be sufficiently imminent to warrant declaratory judgment. *See Super Sack*, 57 F.3d at 1059-1060; *see also Dow Jones*, 606 F.3d at 1347. For example, in patent cases, the Federal Circuit has held that unless a covenant not to sue extends to future production and sale of the same products that were subject to the infringement suit, the covenant does not divest the court of jurisdiction. *Revolution Eyewear*, 556 at 1298 (citing *Super Sack*, 57 F.3d at 1057).

Here, to the extent that Sunshine is requesting that Indiana repudiate its right to sue for future infringement on products or components that are new, meaning not yet designed, Indiana has no obligation to do so. Entirely new products that are not yet designed involve future acts that are too speculative on which to base the Court's jurisdiction. *See Super Sack*, 57 F.3d at 1060. However, to the extent that Sunshine is arguing that the covenant is insufficient to divest the Court of jurisdiction because Indiana's covenant does not "cover components made according to past or present designs regardless of whether they *are made* in the past or future" (Dkt. 41), the Court agrees that existing designs and components constitute the current controversy and are not speculative activities, regardless of when they are made. *See Revolution Eyewear*, 556 F.3d at 1298-1299.

### 3.     Formalities

Finally, the Court reiterates its conclusion in its previous order on Indiana's motion to dismiss, that "Sunshine's lack of formality argument is without merit because the form of Indiana's covenant as a statement of counsel in motion papers and briefs [and without a signature] does not undermine the enforceability of an otherwise sufficient covenant not to sue." Dkt. 34 at 4 (citing *Super Sack*, 57 F.3d at 1059).

### 4. Conclusion

Therefore, the Court concludes that, even taking into account Indiana's newest form of its covenant not to sue, Sunshine has established a case or controversy concerning trade dress rights involving the car seat components and products based on past or present designs, sufficient to defeat Indiana's motion to dismiss.

### B. Transfer

Because the Court has concluded that Sunshine has established that a controversy remains concerning Indiana's trade dress rights, the Court also concludes, for the reasons stated in its previous order (Dkt. 34 at 9-15), that this action will not be transferred to the Southern District of Indiana.

### C. Particularity of the Pleadings

In the instant motion, Indiana asks that the Court reconsider its denial of Indiana's motion to dismiss in light of the Federal Circuit's recent decision in *In re BP Lubricants USA Inc.*, --- F.3d ----, 2011 WL 873147 *1 (Fed. Cir. 2011), holding that the particularity requirement contained in Rule 9(b) of the Federal Rules of Civil Procedure applies to false marking cases. Indiana argues that Sunshine has failed to plead its false marking claim with the particularity discussed by the court in *BP Lubricants*. Dkt. 36 at 8; *see* Fed. R. Civ. P. 9(b). Sunshine maintains that because none of the deficiencies discussed in *BP Lubricants* are present here, the Court should again deny Indiana's motion to dismiss. Dkt. 39 at 5.

#### 1. Rule 9(b) under *BP Lubricants*

In *BP Lubricants,* the court held that Rule 9(b)'s particularity requirement applies to false marking claims and that a complaint alleging false marking is insufficient when it contains only conclusory allegations that a defendant is a "sophisticated company" and "knew or should have known" that the patent expired. 2011 WL 873147 at *1. Specifically, the court stated that "although knowledge and intent may be averred

ORDER - 10

generally" and "a plaintiff may plead upon information and belief," to satisfy Rule 9(b), the complaint must contain "sufficient underlying facts from which a court may reasonably infer that the defendant acted with the requisite state of mind." *Id*. at *3 (citing *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1327 (Fed. Cir. 2009)). The court further explained that a complaint containing false marking claims must

> provide some objective indication to reasonably infer that the defendant was aware that the patent expired. As we explained in *Clontech Labs., Inc. v. Invitrogen Corp*., 406 F.3d 1347 (Fed. Cir. 2005): "Intent to deceive, while subjective in nature, is established in law by objective criteria. Thus, objective standards control and the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Id*. at 1352 (citations omitted).

*BP Lubricants*, 2011 WL 873147 at *3 (internal quotation marks omitted).

      The *BP Lubricants* court found that the plaintiff made four unpersuasive arguments in support of the position that the complaint met Rule 9(b)'s heightened pleading standard. First, the court disagreed with the plaintiff's argument that bare assertions and conclusory allegations that a defendant is a "sophisticated company and has experience applying for, obtaining, and litigating patents" is enough under Rule 9(b). *Id*. at *4. Second, the court concluded that contrary to the plaintiff's assertion, an allegation of false marking does not inherently show intent to deceive. *Id*. Third, the court found that intent to deceive can be inferred from facts set forth in a variety of ways. *Id*. Specifically, the court identified a non-exhaustive list of examples which included naming specific individuals who knew the patent was expired, showing the defendant sued a third party for infringement after a patent expired, or demonstrating that defendant made multiple revisions of the marking after expiration. *Id*. Finally, the court disagreed with the plaintiff's assertion that intent to deceive is established through a rebuttable presumption. *Id*. Instead, the court noted that the showing of a combination of a false statement and knowledge that the statement was false creates a rebuttable

presumption of intent to deceive the public, and therefore, concluded that it "is simply a factor in determining whether Rule 9(b) is satisfied; it does not, standing alone, satisfy Rule 9(b)'s particularity requirement." *Id*. (citing *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362-63 (Fed.Cir. 2010)).

The *BP Lubricants* court concluded that the complaint was deficient because it relied "mostly upon information and belief"; and because "the district court did not find relevant that the complaint failed to allege any facts inferring that BP was aware of the patent's expiration." 2011 WL 873147, at *1, *3. Accordingly, the court held that because the complaint "provided only generalized allegations rather than specific underlying facts from which [the court could] reasonably infer the requisite intent, the complaint failed to meet the requirements of Rule 9(b)." *Id*. at *3.

### 2. Sunshine's Amended Complaint

While "[t]he bar for *proving* deceptive intent [in false marking cases] is particularly high, requiring that [a plaintiff] show a purpose of deceit, rather than simply knowledge that a statement is false," (*BP Lubricants*, 2011 WL 873147 at *4 (emphasis added)), the Court notes that Sunshine is not required to prove deceptive intent at this stage in the proceedings. Rather, to satisfy Rule 9(b), Sunshine's complaint "must contain sufficient underlying facts from which a court may reasonably infer that the defendant acted with the requisite state of mind." *Id*. at *3.

Accordingly, under *BP Lubricants*, a complaint alleging "misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Id*. Additionally, nothing in *BP Lubricants* reverses the Federal Circuit's prior ruling that, in the context of false marking claims, pleading on "information and belief" is permitted under Rule 9(b) when essential information lies uniquely within another party's control, as long as

"the pleading sets forth specific facts upon which the belief is reasonably based." *Exergen Corp.*, 575 F.3d at 1330.

### a. Presumption of Intent

As discussed in the Court's previous order, Sunshine alleges that employees of Indiana, who are named specifically in the complaint, asserted Indiana's patent rights and then later admitted that they knew that the patents at issue had expired at the time they asserted the patent rights. Dkt. 15 at 10-17 ¶¶ 35, 51, 52. Sunshine's complaint also includes pictures to support its allegation that, despite knowledge that the patents were expired, Indiana continued to mark its products with the patents after the expiration dates. Dkt. 15 at 13-15. Taken as true, the Court concludes that these facts as alleged are sufficient to create a reasonable inference of intent to deceive because Sunshine has alleged a false statement combined with knowledge of its falsity. *Pequignot*, 608 F.3d at 1362-63.

### b. Sophistication

Indiana maintains that Sunshine's allegation that Indiana is a sophisticated company with experience applying for, obtaining, and litigating patents does "not rise to the level required under Rule 9(b) and is 'no more of a basis to reasonably distinguish a viable complaint than merely asserting the defendant should have known the patent expired.'" Dkt. 36 at 10 (quoting *BP Lubricants,* 2011 WL 873147, at *4). Indiana also argues that Sunshine's allegations that whether Indiana has in-house or outside patent counsel fails to support an inference of knowledge that the patents had expired. Dkt. 40 at 4-5. Sunshine maintains that its complaint is distinguishable from the one at issue in *BP Lubricants* because Sunshine's complaint "details Indiana's knowledge of intellectual property law by identifying Indiana's past use of patents, patent infringement law suits, trademarks, copyrights, and trade dress, and it also describes the people with that knowledge and the actions they took." Dkt. 39 at 6.

ORDER - 13

In *BP Lubricants*, the court found the allegation of "sophistication" deficient because it was only a bare assertion lacking factual support. 2011 WL 873147, at *4. Likewise, the court found the conclusory allegation that the defendant knew or should have known the patent was expired was impermissible without any underlying support. *Id*. However, here, Sunshine supported its allegations with detail that was not found in the complaint in *BP Lubricants*. Contrary to Indiana's assertion that Sunshine's allegations do not sufficiently plead knowledge of the expiration of the patents-in-suit (Dkt. 40 at 4), for the reasons discussed in it's previous order (Dkt. 34 at 19), the Court concludes that Sunshine's complaint includes details which are specific enough for the Court to infer that Indiana had knowledge of its patents' expiration dates. *See, e.g.*, Dkt. 15 at 6-8.

Additionally, Sunshine's complaint alleges specific facts that suggest Indiana intended to maintain, through questionable or even improper means, the competitive benefits derived from the public's belief that Indiana's products were entitled to patent protection. Dkt. 15 at 10-11. These facts, combined with facts supporting the allegation of sophistication, support the inference that Indiana acted with the requisite intent to deceive.

Finally, Indiana's reliance on district court cases where plaintiffs' complaints were dismissed for alleging knowledge of falsity based on the existence of in-house or outside counsel is misplaced. These cases were dismissed, like the pleadings in *BP Lubricants,* because the plaintiffs failed to plead any facts providing an objective indication from which a court could reasonably infer that defendants knew that the patents were expired. Dkt. 40 at 4-5 (citing *Baker v. Pfizer, et al.*, 2010 WL 1211671 (W.D. Tenn., Mar. 28, 2011); *Brown v. Kraft Foods, Inc*., 2011 WL 1131516 (E.D. Mo., Mar. 28, 2011); *Butler, et al. v. Greenlee-Textron, Inc.*, 2011 WL 1258108 (S.D. Ill., Mar. 31, 2011)). Here, Sunshine's allegation that Indiana's counsel had actual or

ORDER - 14

constructive knowledge is supported by underlying factual allegations and is only one of the many facts Sunshine pleads to show Indiana's knowledge that the patents were expired. *See* Dkt. 15 at 6-8 & 17-19.

### c. Alterations

Indiana also argues that Sunshine's complaint is deficient because allegations of either a single change to product markings, or no change at all, does not support an inference of deceptive intent. Dkt. 40 at 6. Sunshine contends that the fact that Indiana revised its patent markings at least twice after such patents had expired supports its allegation of an "intent to deceive." Dkts. 39 at 7 & 15 at 13-14. Specifically, within its complaint, Sunshine includes pictures of altered font, font size, molding, and materials on Indiana's buckles and harness web adjusters, as well as changes to the patent number on Indiana's products. Dkt. 15 at 11-15. These facts, taken as true, support the inference of intent to deceive.

The court in *BP Lubricants* concluded that intent to deceive can be inferred from facts set forth in a variety of ways including showing that the defendant made multiple revisions of the marking after expiration. 2011 WL 873147, at *4. However, the Court notes that the *BP Lubricants* court did not establish an exhaustive list of ways to show intent or create elements that must be met in pleading false marking claims. Rather, the *BP Lubricants* court was illustrating that there are many ways to support an inference of intent. *See id*. Here, Sunshine alleges revisions to multiple products after the patent expiration dates, and provides pictures of specific products produced after the patent expiration dates that contain the patent markings. Dkt. 15 at 12-15. These facts, coupled with other factual allegations of Indiana's knowledge of a patent's expiration, provide the detail that was missing in the complaint in *BP Lubricants* and go beyond mere conclusory allegations providing the required support for a reasonable inference of intent to deceive under Rule 9(b)'s heightened pleading standard.

ORDER - 15

### 3. Conclusion

As the Ninth Circuit has stated, Rule 9(b) demands particularity in a complaint so that the complaint is "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Similarly, in *BP Lubricants,* the Federal Circuit explained that "[t]he Rule acts as a safety valve to assure that only viable claims alleging fraud or mistake are allowed to proceed to discovery. By eliminating insufficient pleadings at the initial stage of litigation, Rule 9(b) prevents [plaintiffs] using discovery as a fishing expedition." *BP Lubricants*, 2011 WL 873147 at *2.

This is not a case of a vexatious violation hunter on a fishing expedition. Here, Sunshine is a direct competitor of the defendant, not an otherwise disinterested relator, and its complaint has given detailed notice of both its false marking claims and its strategies for overcoming the high bar for proving deceptive intent. Thus, because the Court concluded in its previous order that Sunshine's complaint had provided sufficient underlying facts under Rule 9(b)'s heightened pleading standard, and because the Court concludes that nothing in *BP Lubricants* warrants a different outcome from its previous order, the Court concludes that Indiana's motion for reconsideration regarding insufficient pleading should be denied.

## D. Interlocutory Appeal

Indiana requests that, in the event the Court denies its motion for reconsideration, the Court certify the issues regarding dismissal of Sunshine's trade dress and false marking claims for interlocutory appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(b). Dkt. 40 at 7. The Court concludes that Indiana's request should be denied because it fails to give any explanation of why an interlocutory appeal is necessary or appropriate in this case. The Ninth Circuit has held that, under § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . . [A]pplication for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*See In re Cement Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1982). In *Cement*, the court stated that § 1292(b) is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id*. at 1026. Accordingly, if Indiana wishes to further pursue its request for an interlocutory appeal on the Court's order, it must bring the request in a properly supported motion.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Indiana's motion for reconsideration (Dkt. 36) is **DENIED** and Indiana's request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) is **DENIED without prejudice** to Indiana filing a proper motion containing a request for such an appeal.

DATED this 24th day of May, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 17